THE STATE ex rel. DOBBINS, Appellant, v. REED, SUTTON et al.

In Banc, December 18, 1900.

1. Assessment: VALUATION BY TAXPAYER. The statutes do not authorize the taxpayer to value his land which he has listed for taxation, nor do they require the assessor to accept the valuation which the taxpayer may fix and swear to.

2. ———: TIME OF VALUATION. The assessor is required by the statute to value and assess land after the tracts listed have been copied into the book known as "The Land List," and no wrong is done if the assessor places a different and higher value on the lands at the time or after he transfers the tracts to the assessor's book, from that given and sworn to by the taxpayer at the time he listed it for taxation. But personal property is required to be assessed according to its cash price when listed.

3. ———: NOTICE OF INCREASE. The assessor's book, properly made out and filed in the county clerk's office, imparts notice to every taxpayer of the valuation the assessor has fixed upon his land, and if he does not appeal therefrom to the county court, the law is that, in the absence of any willful or intentional assessment of it at more than its true value in money, he can not recover damages for a change in the valuation of the land made by the assessor, without further notice, after the land had been listed in his presence.

Appeal from Reynolds Circuit Court.—*Hon. J. F. Green,*
Judge.

AFFIRMED.

*Wm. L. Beyersdorff* and *Raney & Carty* for appellant.

(1) In this State, the assessment of property is made
by the assessor by calling on the taxpayer and requiring him
to make a correct statement of all taxable property owned
by him, or under his care, charge or management, except
merchandise which may be required to pay a license tax.
Such statement, after being filled out, shall be signed and
sworn to by the person listing the property, and be delivered
by him to the assessor. "Such list shall contain: first, a list
of all the real estate and its value, to be listed and assessed
on the first day of June, 1881, and biennially thereafter,"
etc., etc. R. S. 1889, sec. 7531; Mining Company v. Nep-
tune, 19 Mo. App. 441. (2) The statement or list of his
taxable property, prepared by the taxpayer, with the value
thereto affixed, subscribed and sworn to by him, when de-
livered by him to the assessor and by the latter received and
accepted, becomes and is, the assessment of the taxpayer for
the respective fiscal year. And the taxpayer has a right to
so consider it, until he is informed to the contrary. Laws
1893, p. 216 and 218, secs. 3 and 4; Mining Company v.
Neptune, 19 Mo. App. 441; The State ex rel. v. Spencer,
114 Mo. 577. (3) The statutes of Missouri no where au-
thorize the assessor, where a list of taxable property is prop-
erly and duly furnished and delivered to him by the tax-
payer, to treat such return as untrue, and to increase the
valuation of the assessment, without giving any notice to the
party making the return. The plain meaning of the revenue

law is, that, after, property is listed for taxation and the assessment duly made, the valuation of the listed property shall not be increased without notice to the party interested. But aside from any consideration of the statute, notice is an absolute prerequisite to the right or power to raise the assessment. Mining Company v. Neptune, 19 Mo. App. 442 and 445; R. S. 1889, sec. 7519; State ex rel. v. Spencer, 114 Mo. 577 and 579; Relfe v. Columbia Life Ins. Co., 11 Mo. App. 378; Railroad v. Cass Co., 53 Mo. 29; State ex rel. v. Lindell Hotel Company, 9 Mo. App. 454; Taber v. Wilson, 34 Mo. App. 97; McConkey v. Smith, 73 Ill. 313; Cleghorn v. Postlewaite, 43 Ill. 428; Darling v. Gunn, 50 Ill. 424; Cooley on Taxation (1 Ed.), pp. 266, 268; Griswold v. School Dist., 24 Mich. 262; Patton v. Green, 13 Cal. 325. (4) Whatever statutory provisions are made for notice and hearing must be regarded, under the rules of construction already given, as mandatory. A compliance with them in all essential particulars should, therefore, be held a condition precedent to any further proceedings. Cooley on Taxation (2 Ed.), p. 365; McConkey v. Smith, 73 Ill. 313; Cleghorn v. Postlewaite, 43 Ill. 428; Manfg. Co. v. Lathrop, 7 Conn. 555; Lowell v. Wentworth, 6 Cush. 221; Railroad v. Russell, 8 Kan. 558; People v. Forrest, 96 N. Y. 544; Moores v. Street Comms., 134 Mass. 431.

*Louis F. Dinning, R. I. January* and *H. W. Hamel* for respondents.

(1) The office of assessor in this State is quasi-judicial in its nature and in the valuation and assessment of real property his acts are judicial and he is not liable to the private individual in civil damages for the honest exercise of his judgment, within his jurisdiction, however erroneous or mis-

guided his judgment may be.  The name applied to the office or officer is immaterial.  The question depends in each case upon the character of the act.  If it be judicial or quasi-judicial in its nature, the officer acts judicially and is exempt from civil liability for a mistake honestly made. Neither is it material that the officer usually or often acts ministerially.  In those cases in which he does act judicially he is nevertheless exempt.  Mechem's Public Offices and Officers, sec. 638, 639.  (2) The immunity from liability where the officer has acted in good faith and with honest motives is unquestioned, but in some jurisdictions he is liable if it is alleged that he acted by willful, corrupt or malicious motives.  Mr. Mechem in his work, *supra,* says, "but the causes in which this precise question was directly involved and which hold that the action can be maintained because of the existence of the motive, are few."  Pike v. Megoun, 44 Mo. 497; Shoettger v. Wilson, 48 Mo. 257; Barhyte v. Shepherd, 35 N. Y. 238; Mayor v. Davenport, 92 N. Y. 604; Dritt v. Snodgrass, 66 Mo. 286; Edwards v. Ferguson, 73 Mo. 687.  (3) The office of assessor in this state is a quasi-judicial office.  Did the defendant Reed, as assessor, have authority under the law to fix the valuation of the property of the relator as the evidence in this case shows he did? If so, it is clear from the authorities above referred to that he is not liable to respond to relator in civil damages.  Defendant Reed, as assessor, had jurisdiction and was vested with authority to do what he did do in the premises.  Section 7564, Revised Statutes 1889, provides for the assessment of real estate—for fixing the value thereof.  "The assessor shall value and assess all the property on the assessor's book according to its true value in money at the time of its assessment, and all the other personal property shall be valued at the cash price of such property at the time and place of list-

State ex rel. v. Reed & Sutton.

ing the same for taxation." There can be no question that the above law authorizes the assessor to assess and value real estate which has theretofore been placed on the assessor's book, as provided by section 7553. Black v. McGonigle, 103 Mo. 198.

*Martin L. Clardy* and *Wm. L. Beyersdorff* for appellant on motion for rehearing.

(1) The decision is in conflict with the following controlling decisions, to which the attention of the court was not called through inadvertence of counsel. George v. Middough, 62 Mo. 549; Laughlin v. Fairbanks, 8 Mo. 367; Railroad v. Washington County, 3 Neb. 343; Butler v. Supervisors, 26 Mich. 22; County of San Mateo v. Railroad, 13 Fed. Rep. 722; Wendell v. Matthews, 20 Johns. 258; Anthony v. Wheeler, 22 N. E. Rep. 494; Kelley v. Vandiver, 75 Mo. App. 435. (2) The decision is in conflict with section 3 of Laws 1893, page 217, and is also with secs. 7532, 7535, 7536, 7537, 7553, 7564, 7567, 7571, 7572, 7575, R. S. 1889. (3) That the court did not consider the case of Mining Co. v. Neptune 19 Mo. App. 439, nor the cases of State ex rel. v. Spencer, 114 Mo. 574; State ex rel. v. Hoyt, 123 Mo. 348, and other cases which are contrary to the decision in this case.

## In Division Two.

BURGESS, J.—This is an action by the State at the relation and to the use of James T. Dobbins against the defendant I. F. Reed, assessor of Reynolds county, upon his official bond as such assessor. The other defendants are his

sureties on said bond. The trial was before the court, a jury being waived.

On September 23, 1893, the defendant as assessor called upon the relator Dobbins, a resident of Reynolds county, at his office in Lesterville, and requested of him a list of his taxable property, for assessment. Dobbins at once made out a list of his taxable property, fixed the value of his land, and delivered the list to Reed. The list contained seven different tracts of land. Reed swore Dobbins to the list, and then stated to him that he could not assess his land at a lower assessment than that at which it had been fixed by his predecessor in office, for the previous year. When Reed made out his assessor's books for the year 1894, he changed the assessment of each of said tracts by placing the values on the book at a different and higher value than appeared on the assessment list as delivered to him by Dobbins. The assessment list was never changed, but was filed by Reed in the county clerk' office of said county.

Dobbins was never given any actual notice of these changes, and never learned of them until after he had paid the taxes on said tracts in December, 1894. Reed filed a copy of his assessor's book in the county clerk's office of said county, on January 23, 1894.

The taxes levied for state, county, school and road purposes for the year, 1894, were by the county clerk of said county extended on the copy of said assessor's book as the taxes due on said tracts, for the year 1894. The extension was made on the basis of values fixed by the assessor, and not as fixed by the relator.

At the close of all the evidence defendant interposed a demurrer to the evidence, which was sustained and judgment rendered in accordance therewith. The case is before us for review upon plaintiff's appeal.

Plaintiff claims that the action of defendant in raising the value of his property as fixed by him, plaintiff, was without authority of law and wrongful, by reason of which he was damaged in the sum of one thousand dollars;

If the assessor was bound by the value of the land fixed by Dobbins, and without authority to fix it at a higher rate, there can be no question as to the correctness of plaintiff's position.

Is this position correct? Section 7531, Revised Statutes 1889 (which was amended in 1893 by requiring assessments to be made annually instead of biennially) requires that the assessor, between the first days of June and January, shall proceed to take a list of the taxable personal property in his county and assess the value thereof. For this purpose he shall call at the office or residence of each person required by law to list property, and shall require such person to make a correct statement of all taxable property owned or under the charge or management of such person, except merchandise, and the person listing the property shall enter a true and correct statement of such property in a printed or written blank prepared for that purpose; which statement, after being filled out, shall be signed and sworn to, to the extent required by this chapter, by the person listing the property, and delivered to the assessor. "Such list shall contain: First, a list of all the real estate and its value.". . . . .

While the above section requires that the list to be furnished to the assessor by the taxpayer shall contain a list of the real estate and its value, and while said section requires the taxpayer to make affidavit to such list, yet that is not binding on the assessor, nor does said list constitute the assessment of the taxpayer's real estate. Section 7532, Revised Statutes 1889, explains section 7531, *supra,* and shows conclusively that said section 7531 does not authorize

the taxpayer to value his property, nor the assessor to accept the valuation fixed by the taxpayer upon his list. Section 7532, *supra,* provides: "If any person required by this chapter to list property shall be sick or absent when the assessor calls for a list of his property, the assessor shall leave at the office or usual place of residence or business of such person, a written or printed notice, requiring such person to make out and leave at the place named by said assessor . . . . a sworn statement of the property which he is required to list, and shall leave with such notice a written or printed blank for the statement required of such person. . . . . And if any such person shall neglect or refuse to deliver the statement, properly made out, signed and sworn to, as required, the assessor shall make the assessment as required by this chapter." . . . .

Section 7551, Revised Statutes 1889, provides that: "The assessor, on examination and comparison of the list of property delivered by individuals, and the lists of lands furnished by the register of lands, and said maps and plats, and after diligent efforts for ascertaining all taxable property in his county, shall make a complete list of all the taxable property in his county, to be called the assessor's book."

Section 7553, Revised Statutes, provides for the arrangement of the assessor's book. It is divided into two parts: Part first, to be known and denominated "the land list." This list shall contain all the lands by him assessed; it provides in detail how the land list shall be arranged on said book.

There is nothing said in these sections about the valuation of the listed property until we reach section 7564, and that provides that "the assessor shall value and assess all the property on the assessor's book according to its true value in money at the time of the assessment. . . . each tract of land and town lot shall be assessed and valued separately."

State ex rel. **v.** Reed & Sutton.

When, then, is the time at which the assessment of real property is required to be made? Certainly it is not at the time the owner of the land delivers his list to the assessor, nor until the assessor enters the list upon his assessor's book, because by the very letter of the statute he is required to value and assess all property on the *assessor's book,* which clearly means that it can not be assessed until the list is copied into the assessor's book. It is not so with respect to personal property which he is required to assess according to its cash price at the time of listing the same for taxation.

By section 7571, the assessor is required to make out and return to the county court, on or before the twentieth day of January in every year, a fair copy of the assessor's books, verified by his affidavit annexed thereto, to the effect that he has made diligent efforts to ascertain all the taxable property, being or situate, on the first day of June last past, in the county of which he is assessor; that so far as he has been able to ascertain the same, it is correctly set forth in the assessor's books to which it is affixed, in the manner and the value thereof stated therein, according to the mode required by law.

When a copy of this book is filed with the county clerk, it imparts notice to everybody of its contents, and section 7572 provides for an appeal from any assessment by any person who feels himself aggrieved thereby, to the county court of the county whose duty it is to hear and determine the appeal in a summary way and to correct and adjust the assessor's books if error has been committed in the assessment. [Sec. 7574, R. S. 1889.]

It thus appears that the law afforded relator ample means for the redress of any unjust or unauthorized action of the assessor in assessing his land, and in the absence of the willful and intentional assessment of it by defendant at

more than its true value in money at that time, relator is not entitled to recover in this action.

For these considerations we affirm the judgment.

*Gantt, P. J.,* and *Sherwood, J.,* concur.

## In Banc.

PER CURIAM.—Upon a rehearing by the Court in Banc, the foregoing opinion of *Burgess, J.* in Division Two is approved, and adopted by the Court in Banc. *Gantt, C. J., Robinson, Brace* and *Valliant, JJ.,* concur; *Sherwood,* and *Marshall, JJ.,* dissent.