## THE STATE ex rel. v. HUDSON, Collector, Appellant, v. CARR.

### In Banc, December 9, 1903.

1. **Taxes:** ASSESSMENT: NON-RESIDENT: DIRECTORY STATUTE. Section 9148, Revised Statutes 1899, providing that "whenever there shall be any taxable property in any county, and from any cause no list thereof shall be given to the assessor in proper time and manner, the assessor shall himself make out the list, on his own view, or on the best information he can obtain," is merely directory and not mandatory, and the failure of the assessor to make out such a list does not invalidate the assessment. Neither does the fact that the assessor did not go upon the land and assess it upon his own view, nor the fact that he simply accepted as correct the previous assessment as shown by the assessment books that were turned over to him by the county clerk, render the assessment invalid.

2. ————: ————: VALIDITY OF LISTS. The assessment lists of taxable property, whether made by the taxpayer or the assessor, are only memoranda for the personal use of the assessor in making up the assessment books. They are not evidence in a suit for the collection of the tax assessed.

3. ————: BARRED BY LIMITATION. Suits for taxes are barred by limitation if they are not begun within five years after delinquency, and the taxes are delinquent after the first of January following the year in which they became payable.

Appeal from Barry Circuit Court.—*Hon. H. C. Pepper,* Judge.

REVERSED AND REMANDED (*with directions*).

*E. C. Frost* for appellant.

(1)   The evidence shows that the assessor entered the lot on his book and fixed the valuation thereon, that the county clerk entered the lot on the collector's tax books and extended the taxes thereon. These books,

were in evidence.    This established a valid assessment. State ex rel. v. Reed, 159 Mo. 77; State ex rel. v. Hutchinson, 116 Mo. 339; State ex rel. v. Bank, 144 Mo. 381. (2)    The introduction of the taxbill made a prima facie case.    Was this prima facie case overcome by the testimony of the assessors tending to show that they had made no entry of this land on assessment lists and filed them with the county clerk before entering the lot on their books?    Defendant was a non-resident of Barry county and had no office, usual place of residence or business in the county, hence section 9145, Revised Statutes 1899, can not apply.    But section 9166 is the law applicable to a case like this.    (3)    The court erred in refusing the declaration of law asked by plaintiff. These books are the primary and best evidence.    State ex rel. v. Hutchinson, 116 Mo. 402; State ex rel. v. Bank, supra.

MARSHALL, J.—This is an action by the collector of Barry county to collect back taxes for the years 1893, '94, '95, '96 and '97, aggregating $34.36, on lot 3 of block 12, in the city of Monett.    The petition is in the usual form.    The answer is a general denial, with a special plea that the assessor did not "proceed to list said lot," nor "assess the value for taxation of said land," as the law directs, and "did not assess said property in any manner," and that "the extension of said pretended taxes on the collector's books were illegal and void;" and a further special plea that the taxes for the years 1893 and 1894 are barred by limitations.

Upon the trial the plaintiff introduced the certified taxbill and rested.

"The defendant to sustain the issues on his part, proved that the defendant did not furnish the assessor a list of his property, nor did the assessor of said county make out any such assessment lists of the said lot and file same with the county clerk for any of the years for which the taxes are claimed to be delinquent.

Nor did the said assessor go upon the premises to ascer-
tain its value, nor did they give the defendant any no-
tice requiring him to make out his assessment lists for
any of the years aforesaid; that the defendant was a
non-resident of Barry county, Missouri, during the
years for which the taxes sued for was levied; that the
assessor only copied the lot from the assessor's book
for the previous years without doing anything further
whatever toward making an assessment of the lot in
question.

"The plaintiff then, in rebuttal, introduced the as-
sessor's books for the several years, showing said lot
entered thereon, also the collector's books for the sev-
eral years, showing the lot to have been entered therein
and the taxes duly extended therein by the clerk of the
county court. To the introduction of which said books
the defendant objected at the time, for the reason that
the assessors never made out or filed any assessment
lists with the county clerk for any of said years.

"By the Court: Objections overruled.

"To which ruling of the court, the defendant ex-
cepted at the time.

"This was all the evidence.

"Plaintiff then prayed the court to declare the law
as follows: 'The court declares the law to be that the
introduction of the assessor's book and collector's book
shows a valid assessment of the lot in question for the
years mentioned, and the judgment should be for the
plaintiff.'

"Which declaration of law the court refused.

"To the action of the court in refusing said declar-
ation the plaintiff duly excepted at the time.

"The court of its own motion declared the law as
follows: 'The court finds that the defendant was a non-
resident of Barry county at all the times when the as-
sessments of his property were made, and that the as-
sessor did not make an assessment of the property
herein on the assessment lists as prescribed by law, and

that the only attempted assessment made of such lot was made by the assessor by copying from the old assessor's books on his book, and for that reason the court declares the law to be that there was no legal assessment of said lot, and the plaintiff can not recover.'

"To the giving of said instruction plaintiff duly excepted at the time.

"The court then rendered judgment dismissing said cause."

From this judgment the plaintiff duly prosecuted this appeal.

## I.

The first question in this case is whether the assessment is void because the assessor failed to make out a list of the property to be assessed, as required by section 9148, Revised Statutes 1899.

The precise point here involved does not appear to have heretofore arisen.

Section 9144, Revised Statutes 1899, requires the assessor, between June and January, to call at the office, place of business or residence of each person, and require of such person to make a correct list of all property owned by him or under his control. The form of such list is minutely prescribed. Section 9145, Revised Statutes 1899, provides that if such person be sick or absent when the assessor so calls, the assessor shall leave at the office, place of business or residence of such person, a written or printed notice requiring such person to make out a list of his property and return it to the assessor. Section 9148, Revised Statutes 1899, provides that "Whenever there shall be any taxable property in any county, and from any cause no list thereof shall be given to the assessor in proper time and manner, the assessor shall himself make out the list, on his own view, or on the best information he can obtain," etc. There is no special provision as to what shall be

done in case the property is owned by a non-resident.

Now the point here involved is, that the defendant was a non-resident of Barry county, and had no office, place of business or residence in said county; that the assessor, therefore, could not call on the defendant and require him to make out a list of his property as required by section 9145, and that the assessor did not the defendant to make out a list of his property as required by section 9145, and that the assessor did not make out a list of the defendant's property, as required by section 9148, and that the assessor did not go upon the premises and ascertain its value, but that in making out his assessment books he took the assessment of the land as it appeared on the assessment books of the previous years. And for these reasons the trial court declared the assessments void.

It thus appears that the crucial question here is, whether a failure of an assessor to make out a list of the property to assess, in case the taxpayer fails to return such list when required, makes the whole assessment void.

It is one of the cardinal rules for the construction of statutes, that the spirit and purpose of the enactment is an invaluable guide to the meaning thereof, for the letter of the law often killeth, while its spirit maketh alive.

The sole purpose of the law in requiring the taxpayer to make out and return to the assessor a list of his property, is to aid the assessor in discovering all of the taxable property, to the end that it may be assessed and made to bear its proper proportion of the expenses of government. Such list made by the taxpayer and the valuation placed by the taxpayer on his property is not conclusive on the assessor. [State ex rel. v. Reed, 159 Mo. 77.] If the assessor discovers other property of the taxpayer which he failed to list, or which was omitted from taxation, it is his duty to as-

sess it, even if it is discovered years afterwards. [Secs. 9176 and 9177, R. S. 1899.]

The list made out by the taxpayer is not required to be returned by the assessor to the county court, but only a fair copy of the assessor's books is required to be so returned. [Sec. 9188, R. S. 1899.]

It follows that if the list to be made by the taxpayer is solely for the use of the assessor and not for the benefit of the taxpayer, and if the assessor has power to assess other property omitted from the list by the taxpayer, then the failure of the assessor to make out a list in the event the taxpayer fails to do so, in nowise prejudices the rights of the taxpayer, and therefore section 9148 must be deemed merely directory and not mandatory, and the failure of the assessor to make out such list does not affect the validity of the assessment.

In State ex rel. v. Bank of Neosho, 120 Mo. l. c. 173, this court held that the law respecting the sale of property for taxes is mandatory, but that the law respecting assessments is, in a large sense, *directory*, and if an omission of the duty devolved by the statute upon the assessor did not injuriously affect the rights of the taxpayer and was not an essential to the making of an assessment, it would not vitiate the tax. And the following rules laid down by Cooley on Taxation were cited and adopted:

"No one should be at liberty to plant himself upon the nonfeasances or misfeasances of officers, under the revenue laws, which in no way concern himself, and make them the excuse for a failure on his part to perform his own duty. On the other hand, he ought always to be at liberty to insist that directions which the law has given to its officers for his benefit shall be observed. Many eminent judges have endeavored to lay down a general rule on this subject, by which the difficulties in tax cases may in general be solved. In one of the most recent cases in which this has been attempted, the general doctrine is stated as follows: 'There are

undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power, or render its existence in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested can not be injuriously affected. Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words, importing that the act required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizens, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed, or the acts done will be invalid. The power of the officer in all such cases is limited by the measure and conditions prescribed for its exercise.'

''The same rule in nearly the same terms has been laid down in other cases, and it seems a sound and just rule, and may reasonably be believed to be in accord with the legislative will in the cases to which it is applicable. All legislation must be supposed to take into account the possible, if not probable, mistakes and irregularities of officers in executing the provisions of the law, and it is hardly reasonable to infer an intent on the part of a legislative body, that a failure of administrative officers to comply with any provision made for the benefit of the State exclusively, or merely as a guide in orderly proceedings, should deprive the State of all benefit to be derived from a compliance with other provisions that embody the main purpose and object of the law.''   [Cooley on Taxation (2 Ed.), 283, 284, 285, and cases cited.]

A further analysis of the same articles of the revenue law (art. 2, chap. 149, R. S. 1899) which requires

an assessor to make out such a list in the event the taxpayer fails to do so, will demonstrate that an omission of such duty by the assessor can not prejudice the rights of the taxpayer nor render the tax void.

Other sections of the article make it the duty of the probate judges to furnish the assessor with a list of every guardian, administrator, etc., having in charge an estate in such court, and then the assessor is required to obtain from such guardian, etc., a list of the personal property belonging to the estate and to assess it for taxation. The officers of manufacturing and business corporations and of banks and of building and loan associations are required to furnish a list of taxable property owned by such companies.

Then section 9157, Revised Statutes 1899, makes it the duty of the county clerk to deliver to the assessor "the assessor's book of the last assessment and the list of taxable lands furnished by the register of lands," and requires the assessor to return them to the county clerk, "as soon as he shall have completed his assessment and made his assessor's books for the year."

Section 9159, Revised Statutes 1899, makes it the duty of the county courts to obtain from the register of the United States land offices of their respective districts, plats, etc., showing all lands subject to taxation and also all private land claims.

Section 9161, Revised Statutes 1899, makes it the duty of the Secretary of State to procure each year from the register of lands at the various United States land offices in this State a list of the lands sold, and to certify the same to the various county courts, and section 9162 makes it the duty of the county courts, annually, to enter the same on such plats (or maps as they are also called).

Section 9165, Revised Statutes 1899, gives the assessor free access to such maps during the time of assessment, "with a view to ascertain what lands are taxable."

Section 9166, Revised Statutes 1899, provides: "The assessor, on examination and comparison of the list of property delivered by individuals, and the list of lands furnished by the Secretary of State, and said maps and plats, and after diligent efforts for ascertaining all taxable property in his county, shall make a complete list of all the taxable property in his county, to be called the assessor's book."

And section 9188 requires the assessor to deliver a fair copy of this assessment book to the county clerk..

Thus it appears that, according to the strict letter of the law, the assessor, in making up his assessment book, under section 9166, is not even required to take into account, at all, the list which he is required by section 9148 to make, in the event the taxpayer fails to return such a list.

But waiving this strictly technical consideration, it also appears that in making up the assessment book, the assessor is guided, not alone by the list returned by the taxpayer, but that he also takes into consideration the assessment books of the previous years, the list of taxable lands furnished by the register of the United States land office, and the plats and maps procured by the county courts, from such United States registers, and the entries annually made thereon by the county court, upon the certificate of the Secretary of State of the lands shown on such maps that have been sold to individuals.

The list of taxable property returned by the taxpayer constitutes only a small part of the evidence the assessor takes into account in making up his assessment book, showing what lands are subject to taxation.

Therefore, even attaching as much significance to the list required by section 9148 to be made by the assessor upon the failure of the taxpayer to return a list, as is required to be given by the assessor to the list returned by the taxpayer, it is manifest that the statements contained in either of such lists are not conclusive upon the assessor in making up his assessment

book, but that he may disregard either of such lists and conclude that the best evidence is that afforded by the other sources of information pointed out.

Moreover, such lists whether made by the taxpayer or by the assessor are only memoranda for the personal use of the assessor in making up the assessment book. They are not evidence in a suit for the collection of the taxes assessed.

As Judge BLACK aptly said in State ex rel. Miller v. Hutchinson, 116 Mo. l. c. 402, the taxbills are prima facie evidence, but the tax books "are the primary and best evidence."

The failure of the assessor to make such a list is no more injurious to the rights of the taxpayer than is the failure of the taxpayer to make such a list, and it comes with bad grace from the taxpayer to say the officer has omitted his duty, when he, the taxpayer, has offended with respect to a like and primary duty imposed upon him. However, such omissions do not go to the essentials of the law governing the assessment of property for taxation, and such provisions of the law are, therefore, merely directory and not mandatory.

It follows that the failure of the assessor to make out the list did not vitiate the assessment.

Neither did the fact that the assessor did not go upon the land and assess it upon his own view, and that he simply accepted the previous assessment as shown by the assessment books that were turned over to him by the clerk of the county court, render the assessment invalid.

Section 9148, which requires the assessor to make out the list upon his own view, also permits him to make it out "on the best information he can obtain," and section 9157 permits him to use the previous assessment books in making his assessment.

An assessor may be perfectly familiar with a piece of property or with the value of property in a given locality, and it would be manifestly absurd to require him

to leave his office and travel perhaps many miles to view, personally, a piece of property with which he was perfectly familiar, and concerning which he is already possessed of all the information that a personal view thereof could give him. In all governmental, as well as all private affairs, there are some things that must be left to good business sense, and as to which the courts will not interfere, except where fraud is charged and proved.

In State ex rel. v. Seahorn, 139 Mo. 1. c. 610, this court, speaking through BURGESS, J., called attention to the difference between proceedings for the assessment of property and those for the sale of property for taxes, and adopted the language of the Supreme Court of Maine, in Rockland v. Ulmer, 84 Me. 503, where it was said: "The anterior proceedings, therefore, do not need to be scrutinized so closely. If it appear that the citizen was liable to taxation, and that the assessor had proper authority and jurisdiction which he did not exceed, minor irregularities in mere procedure, which do not increase his share of the public burden, nor occasion him any other loss, should not prevent a recovery." To which the court added: "All taxation is a burden, yet it is the duty of every citizen to bear his portion of the burden, and no taxpayer should be permitted to escape doing so, upon a mere technicality which in no way materially affects his rights."

The trial court erred, therefore, in declaring the tax void, and should have given the instruction asked by the plaintiff.

## II.

The defendant interposes the statute of limitations as to the taxes assessed for the years 1893 and 1894.

Section 9313, Revised Statutes 1899, requires suits for delinquent taxes to be commenced within five years "after delinquency." Taxes are delinquent after the

first of January following the year in which they are payable, and it is the duty of the collector to enforce the lien of the State.   [Sec. 9291, R. S. 1899.]

The taxes for 1893 became delinquent on January 1, 1894.

This suit was begun on December 14, 1899.   The taxes for 1893 were barred by limitation on January 1, 1899, and could not therefore be recovered in this action.

The taxes for 1894 became delinquent on January 1, 1895, and could not be barred until January 1, 1900. They were not barred, therefore, on December 14, 1899, when this suit was begun.

For these reasons the judgment of the circuit court is reversed and the cause remanded to that court with directions to enter judgment for the plaintiff for the taxes for the years 1894, '95, '96 and '97, together with interest, penalties and costs.

All concur.