THE STATE ex rel. GREENE COUNTY, Appellant, v. J. J. GIDEON, Mayor, and E. F. JAMES et al., Commissioners of CITY OF SPRINGFIELD.

Division One, December 22, 1917.

1. **LEGISLATIVE ACT: History.** The journals of the two houses of the General Assembly may be resorted to to show the history of a legislative act in its progress through them.

2. ————: **Irreconcilable Conflict Between Parts.** Where two parts of a legislative act as published are in irreconcilable conflict, the part that was adopted as an amendment after the bill with the other part had passed one house, as shown by the journals, will be held to be in force, and the other null and void for repugnancy.

3. **DRAMSHOP LICENSE:** County's Share in Local Option County. Where the statute pertaining to cities having a commission form of government provides that the city may tax dramshops therein and of the money collected from them "there shall be paid to the State and county from each dramshop license the same amount that is paid to the State and county from dramshops in other cities of the county in which said city of the second class is situated," and the Local Option Law prohibiting dramshops is in force in the rest of the county outside of such city, the city is not required to pay any sum to either State or county, because it is required to pay the same amount as other cities in the county, and they pay none. The act cannot be enforced because it designates no means by which the State's and county's share may be ascertained.

4. ———: ———: As Formerly Fixed by County Court. Nor can the order of the county court made prior to the adoption of the Local Option Law and fixing dramshop licenses in the cities of the county be used for the purpose of ascertaining what portion of the dramshop taxes collected in said city should be paid to the county. The power of the county court under such former law to fix dramshop licenses was but a means or incident to the enforcement of the then law, and that law and all its incidents were abrogated as to the rest of the county when the Local Option Law was adopted and put in force.

Appeal from Greene Circuit Court.—*Hon. Arch A. Johnson*, Judge.

AFFIRMED.

*Frank W. McAllister*, Attorney-General, *S. P. Howell*, Assistant Attorney-General, and *Warren L. White* for appellant.

(1) Relator and respondents agree that the history of the passage of the Act of 1915 shows that it was the intention of the Legislature to enact the second provision found in that bill. Ex parte Helton, 117 Mo. App. 609. (2) It was obviously the intention of the Legislature in 1915 to provide for the payment to the State and county a part of the money derived from dramshop licenses. That intent should be made effective. State ex rel. v. McQuillin, 246 Mo. 534; State ex rel. v. Rippee, 177 Mo. App. 245; State ex inf. v. Rail-

road, 238 Mo. 613; St. Louis v. Christian Bros. College, 257 Mo. 541; Asphalt Co. v. Hayward, 248 Mo. 286; Sibley County v. Gibbon, 131 N. W. 786; County v. Aberdeen, 31 N. W. 735. If ·the county is to receive the same amount as is paid by licensed dramshops in other cities of the county, that means that the county is to receive the amount that has been fixed by an order of record of the county court as the county dramshop license under Sec. 7199, R. S. 1909. It was obviously not the intention of the lawmakers that the State and county should be deprived of any part of the dramshop license money; and the fact that there are no other cities in Greene County wherein there are licensed dramshops cannot defeat the intention of the Legislature.

*Fred A. Moon* for respondents.

(1) Where there is an irreconcilable conflict between two different parts of the same act, the last in order of position must control. Peterson v. People, 129 Ill. App. 57; Howard v. Barger & A. R. Co., 29 Atl. 1101; Quick v. Whitewater Tp., 7 Ind. 570; 36 Cyc. 1130; Westport ex rel. v. Jackson, 69 Mo. App. 153; 26 Am. & Eng. Ency. Law, p. 619; Real Est. Co. v. Reiter, 47 Neb. 592; Ex parte Hewlett, 22 Nev. 33; Toper v. State, 84 N. W. 650; Scott v. Railroad, 38 Mo. App. 530. (2.) If said subdivision 40th were valid and constitutional relator would not be entitled to recover thereunder, for the reason that there were no other dramshops in other cities of Greene County paying a State and county license. (a) The rule of construction prescribed by statute is: "First, words and phrases shall be taken in their plain or ordinary and usual sense." Sec. 8057, R. S. 1909. (b) The universal rule laid down by the courts is that "in the interpretation of statutes words in common use are to be construed in their natural, plain and ordinary signification. It is a very well settled rule that so long as the language used is unambiguous, a departure from its natural meaning is not justified by any consideration

of its consequences, or of public policy; and it is the plain duty of the court to give it force and effect." 36 Cyc. 1115; State ex rel. v. Gammon, 73 Mo. 421; State v. Riley, 203 Mo. 187; Henry & Coaltsworth Co. v. Evans, 97 Mo. 55; McFarland v. Railroad, 94 Mo. App. 340; Smith v. Railroad, 143 Mo. 37; Martin v. Hunter, 14 U. S. 326; Railroad v. Clark, 53 Mo. 216; State ex rel. v. Wilder, 206 Mo. 549; Warren v. Barber Co., 115 Mo. 572; State v. Wellott, 54 Mo. App. 315; State v. Hays, 78 Mo. 605; State v. Court, 128 Mo. 427; Johnson v. Railroad, 196 U. S. 1; Moorshead v. Railroad, 203 Mo. 165; 36 Cyc. 1106; Lewis's Sutherland on Statutory Construction (2 Ed.), sec. 487; In re King's Estate, 105 Iowa, 320; Randall v. Railroad, 12 S. E. 605; Turner v. Cross, 18 S. W. 578. (c) Courts have nothing to do with the wisdom or policy of a law when the meaning is free from doubt. Lewis's Sutherland on Statutory Construction (2 Ed.), sec. 487; Fishing Co. v. George & Barker Co., 69 Pac. 439; Clark v. Railroad, 219 Mo. 534; State v. Railroad, 219 Mo. 164; State v. Mills, 161 Mo. App. 185; Donaldson v. Donaldson, 249 Mo. 242.

WOODSON, J.—This is a mandamus proceeding instituted in the circuit court of Greene County, by the appellant, to compel respondents to allow, audit and pay a claim made by the county to a portion of the dramshop license levied and collected by the City of Springfield.

The trial court decided the case against the county, and in due time and in proper form it appealed the cause to this court.

The facts of the case are these: The city of Springfield is a city of the second class, located in Greene County, and is operating under a commission form of government which was enacted in 1913 (Laws 1913, p. 420), and the respondents are the commissioners thereof. The general powers of such cities are contained in Section 8 of said act, beginning at page 426 and ending at page 439, and are composed of 74 subdivisions. Subdivision 40 of said section is the one,

involved in this case. In so far as material to this case, the first clause of said Section 8 is as follows: .

"Sec. 8. Every city of the second class shall have power by ordinance, not inconsistent with the Constitution, or any law of this State, or of this article:"

· And the fortieth subdivision thereof reads: ·

"Fortieth: To have the exclusive power to restrain, suppress, regulate, license and tax dramshops and to revoke dramshop licenses."

At ·the time of and for many years prior to the enactment of the act authorizing a commission form of government, local option outside of Springfield was in force in said county.

Subsequently, in the year 1915, the Legislature passed an act amending Subdivision 40 of said Section 8 of the Act of 1913, which reads as follows:

"*Be it enacted,* etc. Sec. 1, etc. That .the fortieth subdivision of Section 8 of an act entitled, . . . be and the same is hereby repealed and that a new subdivision of said section to be numbered Fortieth 'be and the same is hereby substituted therefor, reading as follows, to-wit: FORTIETH: To have the exclusive power to define, regulate, restrain, repress, license and tax dramshops and to revoke dramshop licenses, and to regulate and control the giving or selling intoxicating 'liquors at any place or places in such cities: Provided, that for every dramshop license issued by a city of the second class it shall pay to the State the sum of two hundred dollars per annum in quarterly installments, to the county for county purposes the sum of four hundred dollars per annum in quarterly installments, and to any special road district in which such city may be located five hundred and fifty dollars per annum in quarterly installments, and that the balance shall be paid into the treasury of such city for municipal purposes. Provided, further that no special road district in which such city may be located shall be entitled to any part of the amount paid by such city to the county."

Then the entire Section 8 is again added, including the 74 subdivisions, the act continuing to read:

"Sec. 8. Every city of the second class shall have power by ordinance, not inconsistent with the Constitution, or any law of this State, or of this article:

"First, Etc.,

"Fortieth: To have the exclusive power to restrain, suppress, regulate, license and tax dramshops, and to revoke dramshop licenses, and to regulate and control the giving away or selling of intoxicating liquors at any place in such cities. Of the amount levied and collected from dramshops there shall be paid to the State and county from each dramshop license the same amount that is paid to the State and county from dramshops in other cities of the county in which such city of the second class is situated, and to the special road district there shall be paid $275 every six months, the balance to go to the city."

It is not out of place here to state that it is thus seen that this Act of 1915 contains two subdivisions or clauses, each designated as the fortieth, which are materially different in language and meaning.

The city of Springfield upon becoming a city of the second class with the charter powers before mentioned fixed the amount of dramshop licenses at $2000 per year, or $500 per quarter, which sum the city has ever since been collecting from each of its thirty dramshops. The city has paid the State and county no part of the money so collected.

The petition is in two counts. The first is based upon Section 1 of the Act of 1915, providing for the payment to the State of $200 *per annum* in quarterly installments; and the second count is bottomed in the fortieth subdivision thereof, providing for the payment to the county the same amount that is paid by licensed dramshops in other cities of the county, and sets out an order of the County Court, made prior to the adoption of local option in that county, fixing dramshop licenses therein at $750 per year, of which one half or $375 was set apart for county purposes.

The commissioners of the city as such constitute the city council thereof, with full power or authority to allow, audit and pay all lawful claims against the same.

The respondents, by their return, set up the following reasons why they should not be compelled to audit and allow relator's claim:

First: The two parts of the Act of 1915 quoted above are *conflicting so that one destroys* the other and it is impossible to ascertain the legislative intent.

Second: The Act of 1915 violates Section 28 of Article 4 of the Constitution, in that it provides for the collection and distribution of revenue for State and county purposes, which is not germane to the title of the act.

Third: The Act of 1915 violates section 1 and 10 of Article 10 of the Constitution, as it requires the cities to levy and collect State and county taxes.

Fourth: The first provision found in the Act of 1915 is invalid under section 34 of Article 4 of the Constitution, because the section attempted to be amended is not set forth in full as amended.

Fifth: The history of the passage of the Act of 1915, which is set out in the return, shows that it was the intention of the Legislature to enact the second provision (the one found on page 353. Laws 1915).

Sixth: The last mentioned part of the Act of 1915 violates Sections 53 and 54 of Article 4 and Section 7 of Article 9 of the Constitution in that it is a local and special law and creates a fifth class of cities.

Seventh: Even if the last mentioned part of the Act of 1915 is valid, Greene County is not entitled to any part of the dramshop license money under it, because there are no other cities in the county wherein there are licensed dramshops.

Upon the incoming of the return the relator demurred thereto and its demurrer being overruled, refused to plead further, whereupon judgment was rendered in favor of the respondents and against the relator. From this judgment relator appeals.

I. Counsel for the respective parties to this controversy have with much ability and learning presented and argued a number of legal propositions found in this record; but in the view we have taken of the case it will be necessary to notice but two or three of them.

II. It is first insisted by counsel for respondent that Section 1 of the Act of 1915 is so inconsistent with and repugnant to Subdivision 40 of Section 8 of the same act, that both cannot stand, and therefore, the latter under the law must prevail.

There is an irreconcilable repugnancy between Section 1 of the Act of 1915 and Subdivision 40 of Section 8 thereof. This will clearly appear from a brief excerpt taken from each. From the former:

Irreconcilable Conflict. "Provided that for every dramshop license issued by a city of the second class it shall pay to the State the sum of two hundred dollars per annum in quarterly installments, to the county for county purposes the sum of four hundred dollars per annum in quarterly installments, and to any special road district in which such city may be located five hundred and fifty dollars per annum in quarterly installments, and that the balance shall be paid into the treasury of such city for municipal purposes. Provided, further that no special road district in which such city may be located shall be entitled to any part of the amount paid by such city to the county." And from the latter I quote: "Of the amount levied and collected from dramshops there shall be paid to the State and county from each dramshop license the same amount that is paid to the State and county from dramshops in other cities of the county in which such city of the second class is situated, and to the special road district there shall be paid $275 every six months, the balance to go to the city."

Discussion could add nothing to the clarity of the repugnancy mentioneed.

The insistence mentioned is predicated upon the fact that the legislative journals of the 48th General Assembly show that said Subdivision 40 was offered and adopted as an amendment after the bill had passed

the House with said Section 1 constituting a part there-
of. That such journals may be resorted to in order to
show the history of any piece of legislation is well es-
tablished not only in this State but is recognized else-
where. [State v. Burr, 16 N. D. 581, 113 N. W. l. c. 709;
People v. Dobbins, 73 Cal. 257, 14 Pac. 860.]

The law is well settled that where there is a irrecon-
cilable conflict between two different parts of the same
act, as a rule the last in order of position will control
unless there is some special reason for holding to the
contrary, which does not exist in this case. The author-
ities so holding are numerous. [Peterson v. People,
129 Ill. App. l. c. 57; Howard v. Bangor & A. R. Co.,
29 Atl. 1101; Quick v. Whitewater Twp., 7 Ind. 570;
36 Cyc. 1130; Westport ex rel. v. Jackson, 69 Mo. App.
l. c. 153; 26 Am. & Eng. Ency. Law, p. 619, and cases
cited; Omaha Real Estate & Trust Co. v. Kragscow,
47 Neb. 592, 66 N. W. 658; Ex parte Hewlett,
22 Nev. 333, 40 Pac. 96; Loper v. State, 84 N. W. 650;
Scott v. Railway Co., 38 Mo. App. l. c. 530.]

We are, therefore, clearly of the opinion that said
subdivision 40 is in full force and effect, and that said
Section 1 is null and void for the repugnancy mentioned.

That being true, then how stands the case? That
question is easily answered. Said subdivision 40 pro-
vides that there shall be paid to the State and county
from each dramshop license the *same amount* that is
paid to the State and county *from dramshops*
Dramshop    *in other cities of the county* in which such city
License.    is situated and to the special road district
$275 every six months. The trouble with giving force
and effect to this statute is, there is no other city in
Greene County which levies and collects a dramshop
license. The record shows that the Local Option Law
is in full force and effect in all of said county outside
of the limits of the city of Springfield. Therefore, no
other city in the county is paying or is required to pay
any part of a dramshop license to the State or county,
and, consequently, Springfield is only required to pay the
*same amount* as such other cities pay, which is nothing.

In other words, the statute has not provided what sum in dollars and cents shall be paid by the city of Springfield to the State and county, but refers to a supposed method, which in fact has no existence, by which those amounts could be ascertained. In brief, there is a legislative omission to fix what part of the dramshop license shall be paid to the State and county, or to designate a means by which that part can be ascertained.

Under those facts neither court nor counsel can say the city of Springfield owes the State of Missouri or Greene County any sum of money whatever, and, therefore, neither mandamus nor any other action will lie against her to compel her to pay over any part of the money collected for said dramshop license.

The remedy rests with the Legislature, and not with the courts.

III. Counsel for appellant do not question the soundness of the foregoing ruling as an abstract legal proposition, but seek to escape the legal effect thereof by contending that the courts should look to the order of the county court of Greene County made prior to the adoption of the Local Option Law fixing the amount of dramshop licenses in other cities of that county and use it as a means by which to ascertain the amount due the State and county on account of said licenses.

As Formerly Fixed by County Court.

Obviously this contention is untenable, for the reason that said order of the county court was but an incident, a means of enforcing or carrying out the provisions of another law, which was, by the adoption of the Local Option Law, abrogated or repealed, and necessarily the incident thereto, the means by which that law was designed to be enforced, fell with the abrogation of the law itself. This would seem to be self-evident.

Under this view of the record, the appellant is not entitled to the relief prayed for, and it would there-

fore be useless as well as *obiter* to pass upon the numerous constitutional questions presented by the record.

For the reasons stated, the judgment of the circuit court is affirmed.

All concur, except *Bond, J.*, absent.