STATE OF MISSOURI, at the Relation of CHARLES G. SMITH, Assessor of Saline County, Missouri, Relator, v. NEWTON ATTERBURY, Comptroller of the State of Missouri, Respondent, No. 44438— 270 S. W. (2d) 399.

Court en Banc, July 12, 1954.

964

*J.E. Taylor* for relator.

*John M. Dalton,* Attorney General, and *Donal D. Guffey,* Assistant Attorney General, for respondent.

DALTON, J.—This is an original proceeding in mandamus. Relator seeks an order of this court directing respondent to pre-approve and certify for payment relator's account ▮▮▮ for compensation alleged to be due from the state in the amount of $377.91 for the

making of the 1954 "real estate book" in compliance with the detailed provisions of Section 137.225(2) RSMo 1949, V.A.M.S. As authority for such compensation the relator relies upon Section 53.130 RSMo 1949, as amended Laws 1953, p. 371, S.B. No. 40, Section 1, 67th General Assembly, V.A.M.S., Cum. Supp. 1953.

After the filing of relator's application and the court's order for the issuance of an alternative writ of mandamus, respondent entered his voluntary appearance in this court, waived the issuance and service of the alternative writ and agreed that relator's petition be taken as and for the writ. Respondent thereafter filed a motion to quash the alternative writ on the ground that under the existing law relator is not entitled to the compensation claimed for making the "real estate book." By stipulation, approved by the court, relator and respondent have waived oral argument and agreed that the cause be submitted to the court upon the pleadings and briefs.

The facts pleaded in relator's petition and now admitted for the purpose of respondent's motion are as follows:

Relator is the duly elected, qualified and acting County Assessor of Saline County, a county of the third class. Respondent is the duly appointed, qualified and acting comptroller of the State of Missouri, whose duty it is to preapprove all valid claims and accounts against the state and to certify them to the State Auditor for payment.

It is relator's duty each year, among other things, to prepare and compile a "real estate book" in the manner and form provided by law. He has performed all the duties imposed upon him by law, including the preparation and compilation of the "real estate book", between the first day of January and the first day of May, 1954. The number of entries made in said "real estate book" for 1954 was 12,597. Relator claims that he is entitled to a fee of six cents per entry for this service, one-half of which is to be paid out of the County Treasury and one-half out of the State Treasury; and that the total compensation to which he is entitled for making the "real estate book" for 1954 is $755.82, and the amount for which the State is liable is $377.91. On this basis he presented his account for compensation for making the 1954 "real estate book" to the County Court of Saline County and that court, by order of record, found his said account to be correct and ordered the sum of $377.91 (which is the amount claimed to be due from the State) to be certified to the Comptroller for payment. Relator thereafter presented his account for compensation in the amount of $377.91 for making the 1954 "real estate book" to the respondent for his preapproval and certification to .the State Auditor for payment, and at the same time relator delivered to respondent a duly certified copy of the order of the County Court of Saline County approving relator's account, as aforesaid. Thereafter respondent refused and still refuses to preapprove and

certify to the State Auditor for payment relator's account for compensation in the amount of $377.91 claimed to be due from the State for the making of the 1954 "real estate book", as aforesaid. The refusal of respondent is based upon the sole ground that the Attorney General has ruled, in an opinion under date of June 22, 1953, that under the existing law an Assessor of a county of the third class is not entitled to any compensation for making entries in the "real estate book."

If relator is entitled to six cents per entry for making the "real estate book", he is entitled to a total compensation of $755.82 and if the state is liable to relator for one-half of this amount the amount due relator from the state is the sum of $377.91. There is a valid appropriation sufficient in amount to pay relator the said amount as compensation to him for making the said "real estate book." Respondent would preapprove and certify to the State Auditor for payment the relator's said account for compensation, if it were not for the said opinion of the Attorney General that the State is not so indebted to relator.

Prior to the date of the Attorney General's opinion, respondent and his predecessors ▮▮▮ in office had construed Section 53.130 RSMo 1949, as amended Laws 1953, from July 1, 1946, its effective date, until June 22, 1953, the date of the opinion of the Attorney General, as authorizing assessors of counties of the third class a fee of six cents per entry for making the "real estate book" and as requiring that one-half thereof be paid out of the State Treasury. Each year, during said period of time, respondent or his predecessors in office have, on the basis stated, preapproved and certified to the State Auditor for payment the claims of all County Assessors of the third class against the State for making the "real estate book."

The present State Auditor and his predecessors in office have also construed Section 53.130, from its effective date until the opinion of the Attorney General, as authorizing County Assessors of the third class a fee of six cents per entry for making the "real estate book", one-half of which was to be paid out of the State Treasury. Each year, during said period of time and on the basis stated, they have issued their warrants in payment of the claims of all County Assessors of the third class against the State for making the "real estate book." Also, all of the County Assessors of third class counties and the county courts thereof have, during the above mentioned period of time, construed Section 53.130 as authorizing such assessors a fee of six cents per entry for making the "real estate book" and such county assessors have been paid such fees each year during said period of time, one-half of which has been paid out of the various county treasuries and one-half out of the state treasury.

▮ In view of the above stated facts the sole question presented in this proceeding is whether an assessor of a county of the third

class not under township organization is entitled to the compensation claimed for making the "real estate book." Relator relies upon the provisions of said Section 53.130, supra, while respondent insists that said section "does not authorize compensation * * * for making entries in the 'real estate book.' " Section 53.130, supra, is as follows: "Compensation in class three counties.—The compensation of the county assessor in counties of the third class shall be sixty cents *per list*, and each county assessor shall be allowed a fee of six cents *per entry* for making real estate and tangible personal assessment books, all the real estate and tangible personal property assessed to one person or to husband and wife to be counted as *one name*, one-half of which shall be paid out of the county treasury and the other one-half out of the state treasury. The assessor in counties of the third class shall place the street address or rural route and post office address opposite the name of each taxpayer on the tangible personal property assessment book; provided, that nothing contained in this section shall be so construed as to allow any pay *per name for the names set opposite each tract of land assessed in the numerical list.*" (Italics ours). This section for the purposes of this case is the same as 53.130 RSMo 1949, enacted Laws 1945, p. 1554, Sec. 1, as the 1953 modification is not material here.

Respondent points out that Section 53.130, supra, provides that "each county assessor shall be allowed a fee of six cents per entry for making real estate and tangible personal assessment books" and that it further contains a proviso "that nothing contained in this section shall be so construed as to allow any pay per name for the names set opposite each tract of land assessed in the numerical list." Respondent takes the position that "these provisions are ostensibly conflicting and contradictory giving rise to an ambiguity which may be resolved only by judicial construction." Respondent says that the term "numerical list" as here used is synonymous with land book or "real estate book"; that the language in Section 53.130 is almost identical with that in Section 9806 RSMo 1929, as amended Laws 1931, p. 358; that this court in the case of State v. Gomer, 340 Mo. 107, 101 S.W. (2d) 57, 64, 65, construed said amended Section 9806 and noted that it seemed impossible to harmonize these provisions, but, after a thorough and exhaustive review of the historical development ▮▮▮ of the laws relating to the assessment of property and the compensation provided the officials performing these duties, permitted each provision to stand; that, in reaching this conclusion, the court had before it for consideration another provision, to wit, Section 9780 RSMo 1929, later Section 10,971 RSMo 1939, repealed Laws 1945, p. 1782, Section 1, which section allowed the county court to fix the assessor's fee for making the land book in an amount not to exceed three cents per tract assessed; that this court in the Gomer case held

the words "real estate" were added to the proviso in 9806 RSMo 1929, as amended Laws 1931, p. 358, to require the state to pay one-half of the amount allowed by the county court under Section 9780 for the making of the real estate book; that this construction of Sec. 9806 RSMo 1929, as amended Laws 1931, p. 358, which section respondent says was similar to Section 53.130, is controlling even though Section 9780 RSMo 1929, which was construed with Section 9806, as amended, has been repealed and no other similar section substituted; that, "while Section 53.130, standing alone is uncertain and doubtful, * * * the judicial construction of the language employed in a statute becomes for all purposes a part of the act"; and that, "when this court construed the language here under consideration in the Gomer case, all doubt and uncertainty was removed leaving no room for construction by those charged with the duty of administration of the act." Specifically respondent says that in the Gomer case, "the court gave to the proviso, 'that nothing contained in this section shall be so construed as to allow any pay per name for the names set opposite each tract of land assessed in the numerical list,' its clear and rational meaning" and held that the "numerical list" meant "real estate book."

The part of the opinion in State v. Gomer, 340 Mo. 107, 101 S.W. (2d) 57, 64, 65, construing Sections 9780 and 9806 RSMo 1929, as amended, particularly relied on by respondent, is as follows: "However, the amended section (9806 stated '*all the real estate* and personal property assessed to one person to be counted as one name,' while the old one had said 'all personal property assessed to one person to be counted as one name.' The amended section continued the original proviso that 'nothing contained in this section shall be construed as to allow any pay *per name* for the name set opposite each tract of land assessed in the numerical list.' Laws 1909, p. 717, section 11398, R.S. 1909 (now Mo. St. Ann. § 9806, p. 7907). It is difficult to understand just what was intended by this change, since the new section stated that the fee of 3 cents per entry was for '*making personal assessment book*', and section 11372, R.S. 1909 (now Mo.St. Ann. § 9780, p. 7888), continued without change the provision that 'the assessor shall be allowed, as a compensation for making the numerical assessment * * * such amount as may be allowed by the county court * * * not to exceed the sum of three cents for each and every tract so assessed.' It seems impossible to harmonize the provision 'all the real estate * * * assessed to one person to be counted as one name' with the provision in the same section that it was not to 'be so construed as to allow any pay per name' for assessing land. One would seem to cancel the other leaving the method of computing compensation for assessing real estate the same as it was before. * * *

"The provision 'the assessor shall be allowed, as a compensation

for making the numerical assessment, * * * such amount as may be allowed by the county court * * * not to exceed the sum of three cents for each and every tract' assessed on the land list was not changed, but was carried into the revision of 1919 as a part of section 12790, and in the revision of 1929, as a part of section 9780 (Mo. St. Ann. § 9780, p. 7888). The language of section 9806, R.S. 1929, as amended (Mo. St. Ann. § 9806, p. 7907), is that the assessor's compensation 'shall be thirty-five cents per list' instead of so much 'per list *for taking* * * * each list' as heretofore, but we think that both provisions were intended to mean the same thing, and we so hold. Section 9806, R.S. 1929, now says that the assessor 'shall be allowed a fee of three cents per entry for making *real estate* and personal assessment books', instead of as heretofore stated 'three cents per entry for *making* * * * personal assessment books',* and we believe the words *'real estate* * * * books'* must have been added to make it clear that the state was to pay one-half of the county court's allowance up to 'three cents for each and every tract' properly assessed on the land list as well as 'three cents per entry' for each name of a property owner entered upon the personal property list in the assessor's book. We understand this to be the executive construction which has been given to this section by state auditors in their administration of it. This seems to be a reasonable construction and we think it should be upheld. There is no good reason why the state should pay half of the assessor's compensation for assessing real estate in counties under township organization and not pay any part of it in other counties. As the section now reads, it seems proper to construe the provision, authorizing the county court to allow not to exceed three cents for each tract assessed on the land list, with the section providing for the state to share in paying compensation for making real estate books, and we so hold.'' And, in the closing paragraph of the opinion (101 S.W. (2d) 57, 69), see the criticism of this statute as containing ''contradictory and inconsistent clauses.''

As stated, Section 9780 RSMo 1929 was later designated as Section 10971 RSMo 1939, and it was repealed Laws 1945, p. 1782. It is conceded by the parties that, unless Section 53.130, as now effective, provides compensation to assessors in class three counties not under township organization for the preparation of the ''real estate book'' in accordance with the provisions of Section 137.225 (2) RSMo 1949, no compensation is provided by the existing statutes.

We think the opinion of this court in the Gomer case is not decisive and did not rule the issue here presented. No question was presented in that case as to the right of an assessor in a county of the third class not under township organization to claim compensation under Section 9806 RSMo 1929, as amended Laws 1931, p. 358, for making the ''real estate book'' because at that time compensation was provided

under the provisions of Section 9780 RSMo 1929 for such service and the right to compensation under Section 9806, as amended, was not in issue. It only becomes necessary to construe Section 53.130 RSMo 1949, as amended in 1953, and particularly to construe the words "each county assessor shall be allowed a fee of six cents *per entry* for making *real estate* and tangible personal assessment *books*" (italics ours) in determining relator's right to the compensation claimed, because there is now no other section purporting to provide any compensation for making the "real estate book" in the manner and form required by section 137.225(2) RSMo 1949. As stated in the Gomer case, Section 9806, as amended, was construed with section 9780 RSMo 1929 and, now that section 9780 has been repealed, the present section 53.130 RSMo 1949, as amended, must be construed as standing *alone* and it must be construed with reference to a new and different purpose under the new and different existing statutory conditions. The prior construction even of similar language is not controlling now.

In addition to respondent's primary reliance upon the Gomer case as decisive of the issues here presented, he further relies upon certain general rules, to wit: (1) that the rendition of services by a public officer is deemed to be gratuitous, unless a compensation therefor is provided by statute (Nodaway County v. Kidder, 344 Mo. 795, 129 S.W. (2d) 857, 860); (2) that statutes providing compensation for an officer must be strictly construed against the officer (Smith v. Pettis County, 345 Mo. 839, 136 S.W. (2d) 282, 285); (3) that where the Legislature, after a statute has received a settled judicial construction by a court of last resort, re-enacts it or carries it over without change or reincorporates the exact language theretofore construed, it must be ▮▮▮ presumed that the Legislature knew of and adopted such construction (Roy F. Stamm Elec. Co. v. Hamilton-Brown Shoe Co., 350 Mo. 1178, 171 S.W. (2d) 580, 583); (4) that, in construing a statute, significance and effect should, if possible, be attributed to every word, every phrase, sentence and part thereof, and words or phrases may be stricken out only in extreme cases (Leibson v. Henry, 356 Mo. 953, 204 S.W. (2d) 310, 315); (5) that, where a proviso must be considered in an attempt to determine the intent of the Legislature, it should be strictly construed (Sutherland Statutory Construction, 3rd Ed. Vol. 2, Sec. 4933, p. 471); and (6) that rules of statutory construction, such as the one that the executive interpretation of an ambiguous statute is entitled to weight or that analogous statutes may be referred to to determine the legislative intent, are inapplicable where the meaning of the statute is neither uncertain nor doubtful (State ex rel. City of Kirkwood v. Smith, 357 Mo. 518, 210 S.W. (2d) 46, 48). Viewing Section 53.130, supra, in the light of these rules, respondent insists that said statute provides no compensation to relator for making the 1954 "real estate book" in ques-

tion. Respondent further contends that, even if there exists an irreconcilable conflict between the provisions of Section 53.130, as amended, that the proviso, which is the last in order of position, would control and exclude compensation to relator under the first provision. State ex rel. Greene County v. Gideon, 273 Mo. 79, 199 S. W. 948, 949.

As stated, we must construe Section 53.130, as amended, as it stands today. To better understand this statute we must first refer to some of the provisions of Sections 137.215 and 137.225(2) RSMo 1949 with reference to the preparation of the "real estate book." In part, Section 137.225(2) provides: "The real estate book shall contain all lands subject to assessment. It shall be in tabular form, with suitable captions and separate columns. The first column shall contain the name of the owner or owners, if known; if not, the name of the party who paid the last tax; if no tax has ever been paid, then the name of the original patentee, grantee or purchaser from the federal government, the state or county, as the case may be, opposite thereto; the second column shall contain the residence of the owner; the third column shall contain an accurate description of the land by the smallest legal subdivisions, or by smaller parts, lots or parcels, when sections and the subdivisions thereof are subdivided into parts, lots or parcels; the fourth column shall contain the actual cash valuation. * * * ."

As we have seen, the assessor's compensation under Section 53.130 is based upon *lists*, towit, "sixty cents per list (See Sec. 137.115, as amended in 1953, V.A.M.S. Cum. Supp. 1953, Section 137.130 and Sec. 137.210 RSMo 1949) and upon entries in the "real estate and tangible personal assessment books" at "six cents per entry." However, not only does Sec. 53.130, as amended, provide compensation based upon a certain amount "per list" and "per entry," it further says "all the real estate and tangible personal property assessed to one person or to husband and wife to be counted as *one name*" (italics ours) and it further provides that "nothing contained in this section shall be so construed as to allow any pay *per name for the names* set opposite each tract of land assessed in the numerical list." (Italics ours). The purpose of these provisions referring to "name" and "names" is difficult of ascertainment, because the compensation of the assessor has not been based upon the *number of names* since the repeal of Section 9196 RSMo 1899 by Laws 1909, p. 717 and the enactment of a new section providing compensation based upon "per list" and "per entry", nevertheless the proviso, which had its origin in Section 70(69), Laws 1872, p. 97, has been carried forward to the present date. (See list of prior laws Section 53.130 V.A.M.S.). Further, it is apparent from Sections 137.215 and 137.225(2), supra, that an entry in the "real estate book" consists of much more than a mere entry of a *name* or *names*.

■■■ ''One of the accepted canons of statutory construction permits and often requires an examination of the historical development of the legislation, including changes therein and related statutes.'' State ex rel. Klein v. Hughes, 351 Mo. 651, 173 S.W. (2d) 877, 879. And, see State v. Gomer (101 S.W. (2d) 57, 60). In this case a review of the historical development and the statutes dealing with assessor's compensation shows a legislative intention to provide compensation for such assessors for assessing real estate and making the real estate book, unless the 1945 repeals and amendments, Laws 1945, p. 1554 and p. 1782 show the contrary by the repeal of Section 10971 RSMo 1939 (Section 9780 RSMo 1929) by Laws 1945, p. 1782, after Section 9806 RSMo 1929 had been amended. Laws 1931, p. 358, so as to base compensation upon ''per entry for making real estate and personal assessment books.'' And, see Laws 1945, p. 1553, Section 1. In such situation, the repeal of Section 10971 RSMo 1939 by Laws 1945, p. 1782, did not evidence a legislative intent that no compensation be paid assessors for preparing the ''real estate book.''

Respondent construes the proviso in Section 53.130 as a prohibition against a construction allowing the assessor compensation for making the ''real estate book'' and contends that such proviso shows a legislative intent ''exactly contrary to that expressed in the analogous statute relating to township organization counties.'' We cannot agree with this contention. In construing Section 53.130, as amended, as authorizing ''a fee of six cents per entry for making real estate and tangible personal assessment books'', we are not construing the section so ''as to allow any person pay *per name* for the names set opposite each tract of land assessed in the numerical list.'' (Italics ours). There can be no sound contention that the word ''entry'' and the word ''name'', as used here, are synonymous. Nor is it necessary to strike the proviso, since it may be given its plain meaning that there can be no payment on the basis of the number of names. The statutes have not attempted to fix compensation on the basis of the number of names, since the repeal of Section 9196 RSMo 1899 by Laws 1909, p. 717 and the enactment of the new section placing compensation on a different basis.

■■ While it is true that Section 53.130, as amended, has a number of clauses, we do not construe them to be ''contradictory and inconsistent'' with reference to the part expressly providing compensation ''per list'' and ''per entry.'' Even if the meaning of certain other clauses may be ambiguous or uncertain, the provision as to compensation is not directly in conflict with any other provision. The language of the section, however, is sufficiently doubtful and ambiguous that we may properly give weight to the admitted uniform interpretation given this section since its enactment in 1945 by all state and county officials charged directly with the duty of approving and paying the claims of such county assessors for compensation. State ex inf. Gentry

974

v. Long-Bell Lbr. Co., 321 Mo. 461, 12 S.W. (2d) 64, 80; In re Bernays' Estate, 344 Mo. 135, 126 S.W. (2d) 209, 217. And we hold that such construction is correct and proper. Such a construction is consistent with the statute providing compensation for township assessors in counties of the third class where compensation for the making of the "real estate book" is provided for in Section 65.240 RSMo 1949, as amended Laws 1953, Senate Bill 230, 67th General Assembly, V.A.M.S. 1953 Cum. Supp.

The alternative writ should be made peremptory. It is so ordered. All concur except *Tipton, J.,* not sitting.