**Floyd E. BECKER, Appellant,**

v.

**ST. FRANCOIS COUNTY, Missouri, and M. J. Mount, Roy E. Presnell, and Denny M. Smith, Judges of the County Court, Respondents.**

No. 52938.

Supreme Court of Missouri, Division No. 1.

Dec. 11, 1967.

Roberts & Roberts, by: Raymond S. Roberts, Farmington, for appellant.

Jack Moore, Pos. Atty., St. Francois County, Farmington, by David L. Colson,

Asst. Pros. Atty., Farmington, for respondents.

HOUSER, Commissioner.

Action for declaratory judgment. Floyd E. Becker impleaded St. Francois County and the judges of the St. Francois County Court for a judicial declaration that certain fees and payments received by him, disallowed following an audit of his books as County Clerk, should be allowed plaintiff and that he not be required to reimburse the county therefor. After a trial of the issues the court rendered judgment declaring plaintiff indebted to the county in the sum of $2,880.93. From that judgment plaintiff appealed to the St. Louis Court of Appeals, which court transferred the case to this court on the ground that St. Francois County is a party to the record. Becker v. St. Francois County, Mo.App., 413 S.W.2d 587. We have jurisdiction, for the reason and under the authorities cited in the opinion of the court of appeals.

Three types of fees are involved: (1) for keeping records in connection with the activity of distributing surplus agricultural commodities to needy persons, undertaken by the county under the provisions of § 205.-960[1]; (2) for extending the tax on the assessment book; (3) for preparing the county financial statement.

I. Fees paid under surplus commodities program.

The county court made an order in which it "allotted $100.00 per month to [augment] the County Clerk's salary * * *" for clerical services under this program. Under this arrangement plaintiff received $1,-200. Paragraph 1 of § 205.960 authorizes counties to establish such a program. Paragraph 3 thereof directs the division of welfare of the state department of health and welfare to reimburse to the extent of fifty per cent the sum expended by a county, among other things, for "mainte-

1. All section citations refer to RSMo 1959, V.A.M.S.

nance of proper records" in connection therewith, provided the expenditure has been approved by the department of welfare.

When the county embarked upon this program it became a county function and the duty devolved upon the county clerk to keep the records and perform the necessary clerical services in connection therewith. These new and additional clerical duties, required to be performed in connection with a county function, were germane to the official duties of the office of county clerk. §§ 51.120, 51.150.

Appellant argues that the enactment of § 205.960 required him as a county official to perform work beyond the statutory duties of a county clerk, and that, there being no statute prohibiting a county clerk from being paid for extra services, a contract therefor is lawful, and that the order of the county court "was a lawful contract."

■ In the first place, the order of the county court was not a lawful contract. Section 432.070 provides any contract made by a county shall be in writing and shall be subscribed by the parties thereto. Although the county court spread its order upon the record appellant is not shown to have filed any acceptance of the order. As to him the "contract," if it be a contract, was oral. Cook v. St. Francois County, 349 Mo. 484, 162 S.W.2d 252, 254 [2].

■ In the second place, the mere fact that additional duties were imposed upon appellant did not entitle him to additional compensation. "At every session of the legislature laws are enacted which affect the duties of many state and county officers. The mere fact that such legislation may result in an increase in the work and responsibility of an officer does not entitle him to claim additional compensation." Mooney v. County of St. Louis, Mo.Sup., 286 S.W.2d 763, 766 [5].

■ More importantly, the right of a public officer to be compensated by salary or fees for the performance of duties imposed on him by law is purely a creature of statute, Felker v. Carpenter, Mo.Sup., 340 S.W.2d 696, 701 [4]; State ex rel. Forsee v. Cowan, 284 S.W.2d 478, 481 and "[t]he general rule is that the rendition of services by a public officer is deemed to be gratuitous, unless a compensation therefor is provided by statute." Nodaway County v. Kidder, 344 Mo. 795, 129 S.W.2d 857, 860 [5]; State ex rel. Smith v. Atterbury, 364 Mo. 963, 270 S.W.2d 399, 403. Before a county clerk or other public official may retain fees or other payments received by virtue of his office he must point out the statute authorizing such payments. State v. Ludwig, Mo.Sup., 322 S.W.2d 841, 849 [11]; Nodaway County v. Kidder, supra, 129 S.W.2d, 1. c. 860 [8], and cases cited.

Appellant, of course, cannot point to any statute authorizing the payment of compensation for the services rendered. Neither Chapter 205 nor any section in any other chapter makes provision for extra compensation to county clerks for the performance of the new and additional duties under Chapter 205. Appellant's entire claim is based upon his "contract" with the county court.

■ Finally, the order of the county court was void as against public policy. Even if extra services are required to be performed, if they are germane to the official duties of the office, the employment of an officer at extra pay is against public policy, and he is not entitled to compensation for performing the services. State ex rel. Forsee v. Cowan, supra; Polk Township, Sullivan County v. Spencer, 364 Mo. 97, 259 S.W.2d 804, 805 [2]. In this connection we approve the following from Anno., 159 A.L.R., pp. 606, 607 and 608:

"As a general rule the salary attached to a public office constitutes the full compensation for all the services required to be performed by a public officer, so that he may not assert a right to additional compensation although by statute or ordinance the duties of his office, as it was constituted

at the time of his appointment, have been increased, or he has performed additional services which are merely incidental to the duties of his office.

\* \* \* \* \* \*

"(1) If the extra services which the officer undertakes to perform at an agreed extra compensation are a part of or germane to the official duties of his office or are merely incidental to those duties, the existence of an express contract for additional compensation does not prevent the operation of the rule referred to supra, I, that he is not entitled to extra compensation for extra services rendered by him. In such case the contract for additional compensation is invalid as against public policy."

The court did not err in finding appellant indebted to the county in the sum of $1,200 on account of fees paid under the surplus commodities program.

II.   Fees paid for extending the tax.

After assuming the office of county clerk January 1, 1955 Floyd Becker always charged 3¢ per name for extending the tax on the assessment book.[2] This was the practice of his predecessor in office. In two previous audits this method was approved and fee bills based on 3¢ per name were approved. The County Clerk of St. Charles County based his fees on the same method and the state auditor approved his bill in every audit conducted in St. Charles County.

In the present audit the supervisor counted the extensions made, not the names. An extension is a combination of all of the separate parcels of property in a section or block owned by one person; the valuation of several parcels in a section or block, owned by the same person, would be consolidated into one entry. As a result he determined that there had been an over-

charge of $325.21 for the years 1962 and 1963.

Section 51.400, subd. 1. provides: "The following fees and compensation shall be allowed to and collected by the clerk of the county court, in addition to other fees now provided by law, for services rendered: (1) For extending the tax on the assessment book, three cents for each name, to be paid by the state and county in proportion to the number of tax columns used by each."

Appellant contends that in clear and unambiguous language the legislature has provided for compensation at the rate of 3¢ per name; that the statute needs no construction, but should be applied according to what it says, "three cents for each name." Respondents join with appellant in urging that the language is clear and unambiguous, and that the statute should be construed according to its plain meaning; but the clear meaning they attribute to the language is that the clerk gets 3¢ for each extension he makes. Respondents argue that the purpose of the statute is to provide payment *for the act of extending the tax* on the assessment book; that an extension is made by applying the tax rate to the assessment and making the proper notation in the proper column across the page for the total tax; that the statute provides compensation at the rate of 3¢ per name for each name so extended; and that in instances where the clerk does not extend the tax across the page of the tax assessment record he does not earn the 3¢ fee.

A doubt arises on the question whether § 51.400, subd. 1. provides compensation for each name counted or for each extension made. There is ambiguity in the language. We must construe the section. Statutes providing compensation for an officer are strictly construed against the officer. State ex rel. Smith v. Atterbury, supra, 270 S.W.2d, l. c. 403 [2]; Smith v. Pettis County, 345 Mo. 839, 136 S.W.2d

2.  With this exception: he made no charge for names not certified to the state tax commission (charitable institutions, forest lands and the property of the state and its political subdivisions, which had no valuation).

282, 285. Appellant urges that since there has been no change in the wording of the section from 1939 to the present, and since the commonly used method of counting the names and not the extentions, as shown by the past practices of the state auditor's office, must have been known to the legislature when it reenacted the same language time after time, it must be presumed that the legislature knew of, and adopted such construction, and thereby approved of this method. We recognize these rules of construction and while not binding on the courts they are, of course, factors to be given serious consideration. Another important canon of construction, however, and one which we think is of even greater importance in the situation here encountered, is that in determining the meaning and intent of the legislature the words used must be considered in pari materia, and cognate sections studied. State ex rel. Wright v. Carter, Mo.Sup., 319 S.W.2d 596, 600 [7].

In the statutes governing the actions of *assessors* and prescribing their fees for making the real estate and tangible personal books we find a cognate situation. Section 53.110, which prescribes fees for the services of county assessors in counties of the second class at 30¢ per list and 6¢ per entry for making the books, contains this limitation: "* * * all the real and tangible personal property assessed to one person to be counted as one name." Section 53.130, which provides for the compensation of county assessors in counties of the third and fourth class, after prescribing a fee of 8¢ per entry for making the real estate and tangible personal property assessment books, contains the same limitation: "* * * all the real estate and tangible personal property assessed to one person or to husband and wife to be counted as one name, * * *." Section 137.215 provides that in making up the assessor's books (the land list) the assessor "shall consolidate all lands owned by one person in a section, and all town lots owned by one person in a square or block, into one

tract, lot or call, when it is practicable; * * *" and for unnecessarily dividing the same up into more tracts than one a penalty is provided, namely, the deduction from the account of the assessor of 10¢ for each tract or lot not so consolidated. Section 137.225, subd. 2., applicable to certain counties as specified in § 137.230, contains a similar provision. Section 137.235 then provides for the computation and extension of the taxes in the assessor's book, by the county clerk. These sections, read together with other cognate sections, convince us that the legislature is committed to the principle of *consolidation,* whereby in the case of properties lying in sections all holdings of a property owner in any one section shall be grouped together under one name, and in the case of town lots all holdings of a property owner in any one square or block shall be consolidated into one tract, lot or call, insofar as may be practicable, and that under § 51.400, subd. 1. (1), the county clerk is to be paid for extending the tax on the assessment book three cents for the one name in each section into which all of that property owner's holdings shall have been consolidated, and three cents for the one name in each square or block into which all of that property owner's holdings shall have been consolidated. In other words, when the legislature in § 51.-400, subd. 1. (1) prescribes a fee of 3¢ for each "name" it is intended that each name for which a 3¢ fee is charged represent and stand for all of the various parcels, tracts and lots of land owned by one entity in each section and in each square or block, consolidated into one. It does not mean that there shall be a payment on the basis of the number of names in the sense that there shall be a payment of 3¢ for extending the tax on every piece of property, where there are a number of separate holdings by one landowner in one particular section, square or block. See State ex rel. Smith v. Atterbury, 364 Mo. 963, 270 S.W.2d 399, 405 [7], holding that "there can be no payment [to assessors] on the basis of the number of names."

To make this construction of the statute perfectly clear, take this example: John Doe owns Lots 1, 2 and 3 in Block 1 of Jones Addition to a certain city; Lots 10 and 12 in Block 2 of Smith Addition to the city; the SW¼ SW¼ of Section 6, Township 20, and the NE¼ and the SW¼ of Section 10, Township 20, all in the same county. In extending the tax on these eight separate properties belonging to John Doe the clerk would be entitled to 3¢ for the extention in Block 1, Jones Addition; 3¢ in Block 2, Smith Addition; 3¢ in Section 6 and 3¢ in Section 10, or a total of 12¢ for extending the taxes of John Doe in that county.

The court did not err in finding for the county on the item of fees paid for extending the tax on the assessment book.

### III. Fees paid for preparing the financial statement.

 In charging fees for preparing the 1962 and 1963 financial statement Floyd Becker estimated the number of words and figures for which he charged, on the basis of every word, figure, comma, period, semicolon, etc. He explained that he could not possibly count every word, figure and symbol contained in the statement, and therefore he adopted a sampling method, taking a sample out of the beginning, middle and end and estimating on that basis arrived at a total per column inch. This was the same method adopted by previous clerks and previous audits had approved this procedure. The auditor, who counted only words, figures and dollar marks (not punctuation marks, decimal marks or other symbols) counted each word, figure and dollar mark in the statement, and on that basis found and established an overcharge of $777.43 for the two years in question.

The governing statute, § 50.810, subd. 2., provides that for the preparation of the copy for the financial statement the court may allow not less than 10¢ nor in excess of 30¢ "for every hundred words and figures."

Mr. Becker's method of computing his fees for this service was improper in two respects: (1) in estimating by sample instead of counting every word and figure, and (2) in counting punctuation marks. The statute plainly restricts the count to words and figures. Commas, periods, semicolons and other punctuation marks are not figures. They are marks. Figures are written or printed characters representing a number; numerals; digits; letters or mathematical symbols. Webster's New International Dictionary, 2nd ed., Unabridged.

The court properly upheld the auditor on the item of fees paid for preparing the financial statement.

No error appearing, the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.